# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| CHARLES CHAMBLISS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> AMERICOLLECT, INC., <br><br> Defendant. | Case No.: 20-cv-922 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 133, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Charles Chambliss is an individual who resides in the Eastern District of Wisconsin (Waukesha County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debts arose from a consumer transaction that included an agreement to defer payment.

6. Defendant Americollect, Inc. ("Americollect") is a corporation with its principal place of business located at 1851 S. Alverno Rd., Manitowoc, WI 54220.

7. Americollect is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Americollect is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Americollect is licensed as a "Collection Agency" by the Wisconsin Department of Financial Institutions Division of Banking pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code DFI-Bkg. Ch. 74.

10. Americollect is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. On or about August 29, 2018, Americollect mailed a debt collection letter to Plaintiff regarding alleged debts owed to "MADISON MEDICAL AFFILIATE" ("MMA") and other creditors. A copy of this letter is attached to this complaint as Exhibit A.

12. Upon information and belief, the alleged debts referenced in Exhibit A were all incurred as the result of transactions for personal medical services with an agreement to differ payment. Medical services provided and then billed later always include an "agreement to defer payment," otherwise the consumer is under no obligation to pay. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant

2

sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

13. The alleged debt in Exhibit A was thus incurred for personal, family, or household purposes, namely personal medical services.

14. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

15. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

16. Exhibit A states that Plaintiff incurred an alleged debt in the amount of $99.08 for medical services with an "ACTIVITY DATE" of January 18, 2013, and with the "account number" ending in 6972.

17. Exhibit A is dated August 29, 2019.

18. Upon information and belief, Americollect uses the term "ACTIVITY DATE" on its debt collection letters to mean the date that the consumer obtained medical services from the medical provider.

19. Americollect mailed Exhibit A to Plaintiff after the statute of limitations had run on the alleged MMA debt.

20. The statute of limitations for actions on contracts in Wisconsin is six years. Wis. Stat. § 893.43; *see also Hennekens v. Hoerl*, 160 Wis. 2d 144, 159, n.12, 465 N.W.2d 812, 818 n.12 (1991) ("a creditor has six years to commence an action on a promissory note").

21. Upon information and belief, MMA originally billed Plaintiff for the services associated with account no. 6972 in or around February 2013 and no later than March 2013.

22. Upon information and belief, the MMA account corresponding with Americollect account no. 6972 was in default no later than May 2013.

23. No one ever sued Plaintiff to collect the alleged MMA debt.

24. Plaintiff made no payments or promises to pay any amount to MMA or any party collecting on MMA's behalf, including but not limited to Americollect.

25. Under Wisconsin law, the expiration of the statute of limitations extinguishes the debt. Wis. Stat. § 893.05 ("**Relation of statute of limitations to right and remedy.** When the period within which an action may be commenced on a Wisconsin cause of action has expired, the right is extinguished as well as the remedy.").

26. Thus, attempts to collect a time-barred debt in Wisconsin are attempts to collect debts that no longer exist, in violation of the FDCPA. 15 U.S.C. § 1692e(2)(a); Wis. Stat. § 427.104(1)(j); *see also McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014) (a debt collector violates the FDCPA when it misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable).

27. Plaintiff received Exhibit A after the statute of limitations had expired.

28. When it mailed Exhibit A to Plaintiff, Americollect knew or should have known that the statute of limitations had expired.

29. Americollect is a high-volume debt collector, sending hundreds, if not thousands, of debt collection letters each day to Wisconsin consumers.

30. Nothing on Exhibit A explains that the statute of limitations expired before Plaintiff received Exhibit A in the mail. *See McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1021 (7th Cir. 2014) ("The proposition that a debt collector violates the FDCPA when it

4

misleads an unsophisticated consumer to believe a time-barred debt is legally enforceable, regardless of whether litigation is threatened, is straightforward under the statute.").

31. Exhibit A could mislead the consumer into making a payment on a time-barred debt and further misleads the consumer into believing that the debt remains legally enforceable after the statute of limitations has expired. *See Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684-86 (7th Cir. 2017).

32. Moreover, Exhibit A compounds the unfair and misleading nature of attempting to collect a time-barred debt by implying that the consumer's right to dispute the debts has lapsed because the consumer was "previously" sent a validation notice and "pooling" numerous accounts across several creditors without explaining how partial payments would be applied.

33. Under Wisconsin law, a licensed collection agency must obtain written authorization from each creditor before consolidating accounts from multiple creditors into a single collection effort. *See,* Wis. Stat. § 218.04(9)(j) and Wis. Admin. Code § DFI-Bkg. 74.11(5).

34. This written authorization must include: "A statement as to how the amount of each payment received for a combined account will be apportioned to the creditors" and "if payments will be apportioned pursuant to the discretion of either the licensee or the attorney of record, a statement indicating the discretion to apportion." Wis. Admin. Code § DFI-Bkg. 74.11(5)(f) and (g).

35. Exhibit A does not disclose to the consumer how payments for the combined account will be apportioned to each creditor and each account.

5

Case 2:20-cv-00922-WED   Filed 06/18/20   Page 5 of 16   Document 1

36. The failure to disclose this information is especially material to the unsophisticated consumer here because one of the accounts is past the statute of limitations and several of the other accounts appear to be very close to the statute of limitations.

37. An unsophisticated consumer does not understand how statutes of limitations work. *See, e.g., Al v. Van Ru Credit Corp.*, No. 17-cv-1738-JPS, 2018 U.S. Dist. LEXIS 70321, at *7 (E.D. Wis. Apr. 26, 2018) ("The Court cannot assume that the average consumer, much less an unsophisticated one, would have any familiarity with the principles of contract law.").

38. Upon information and belief, unless a consumer expressly instructed Defendant to apply partial payments to the most recent account, Defendant would apportion the consumer's payment by making small partial payments across many of the accounts in order to reset the statute of limitations.

39. Upon information and belief, Defendant purposely and deceptively pools small accounts that are past or close to the end of the statute of limitations with larger, "fresher" accounts in order to mislead consumers into tendering a small partial payment in order to avoid being sued by the creditor with the greater debt.

40. The failure to disclose that a partial payment that the consumer would believe was being applied to the largest and most recent account, would reset the statute of limitations on numerous accounts is a deceptive and unfair means of collecting the debt. *See, Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 686 (7th Cir. 2017) ("we believe the FDCPA prohibits a debt collector from luring debtors away from the shelter of the statute of limitations without providing an unambiguous warning that an unsophisticated consumer would understand.").

6

41. Upon information and belief, when Exhibit A was mailed, Americollect knew or had reason to know that Madison Medical Affiliates had no intention to sue Plaintiff on any of these accounts before the statute of limitations had run. Thus, even assuming Plaintiff was not yet entitled to a full statute of limitations affirmative defense on one or more of the accounts referenced in Exhibit A, combining the accounts into a single collection effort was a deceptive and unfair means of obtaining a statute of limitations "reset" just before the creditor lost the legal right to attempt to collect the debt.

42. Plaintiff read Exhibit A.

43. Plaintiff was confused and misled by Exhibit A.

44. The unsophisticated consumer would be confused and misled by Exhibit A.

45. Plaintiff had to spend time and money to investigate Exhibit A and the possible consequences of responding to Exhibit A.

### *The FDCPA*

46. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads

7

a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

47. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

48. Misrepresentations of the character, amount or legal status of any debt, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.*, 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

49. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

9

50. 15 U.S.C. § 1692e(2)(A) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

51. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

52. 15 U.S.C. § 1692f generally prohibits "any unfair or unconscionable means to collect or attempt to collect any debt."

53. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

54. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

55. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a

10

letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

56. Misstatement of Plaintiff's debt is a material false statement (*see Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009)) because it misleads the unsophisticated consumer about the amount of the debt. 15 U.S.C. § 1692e(2)(a).

### *The WCA*

57. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

58. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

59. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

60. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

61. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

62. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

63. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

64. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

65. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

66. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

67. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

**68.** Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. Americollect mailed Exhibit A to Plaintiff after the statute of limitations had run on the January 18, 2013 MMA account.

71. The expiration of the statute of limitations extinguished the debt. Wis. Stat. § 893.05.

72. Exhibit A attempts to collect a debt that does not exist. *See Pantoja*, 852 F.3d at 684.

73. Combining expired "debts" and debts that are about to expire with larger, fresher accounts owed to other creditors without specifying how a consumer's partial payment will be applied is a misleading and unfair means of attempting to obtain a statute of limitations reset.

74. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f and 1692f(1).

## COUNT II – WCA

75. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. Count II is brought on behalf of Plaintiff.

13

77. Americollect mailed Exhibit A to Plaintiff after the statute of limitations had run on the January 18, 2013 MMA account.

78. Exhibit A attempts to collect a debt that is time-barred and thus extinguished as a matter of law. Wis. Stat. §§ 893.43, 893.05.

79. Exhibit A attempts to enforce a right to a debt, even though Defendant knew or should have had reason to know that no such right existed at the time Plaintiff received Exhibit A.

80. Combining expired "debts" and debts that are about to expire with larger, fresher accounts owed to other creditors without specifying how a consumer's partial payment will be applied is a misleading and unfair means of attempting to obtain a statute of limitations reset.

81. Defendant violated Wis. Stat. §§ 427.104(1)(h) and 427.104(1)(j).

82. Plaintiff further seeks declaratory and injunctive relief under the WCA. Wis. Stat. § 426.109(1).

## CLASS ALLEGATIONS

83. Plaintiff brings this action on behalf of two Classes.

84. Class I ("Past SOL Class") consists of:

(a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the forms represented by Exhibit A to the complaint in this action, (c) incurred for personal, family, or household purposes, (e) more than after the day before the six-year statute of limitations would expire on one or more of 2,222 days after the "Activity Date" stated for one or more of the accounts referenced in the letter in the form of Exhibit A, (f) where the letter was mailed between June 18, 2019 and June 18, 2020, inclusive, (g) and was not returned by the postal service.

Excluded from the class are any persons for whom Defendant has records showing that the debt was not past the statute of limitations because: (i) the consumer made one or more payments on the account(s) during the six-year period before the letter in the form of Exhibit A was mailed, (ii) the consumer included the account as a claim in a bankruptcy petition and the bankruptcy was

resolved without the debt being discharged, (iii) the creditor obtained a judgment against the consumer, or (iv) the consumer otherwise reaffirmed the obligation.

85. Class II ("Combined Debts Class") consists of:

(a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the forms represented by <u>Exhibit A</u> to the complaint in this action, (c) incurred for personal, family, or household purposes, (e) combining accounts across multiple creditors, (f) between June 18, 2019 and June 18, 2020, inclusive, (g) that was not returned by the postal service.

86. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

87. There are questions of law and fact common to the members of the Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> violates the FDCPA and WCA.

88. Plaintiff's claims are typical of the claims of class members. All are based on the same factual and legal theories.

89. Plaintiff will fairly and adequately represent the interests of class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

90. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

91. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) declaratory relief;

(b) injunctive relief;

(c) actual damages;

(d) statutory damages;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: June 18, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com